**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

MARC HILINSKI,                             §
                                           §
Plaintiff,                                 §
                                           §
                                           §
v.                                         §    CIVIL ACTION NO. 3:26-cv-638
                                           §
THE LINCOLN NATIONAL LIFE                  §
INSURANCE COMPANY,                         §
                                           §
Defendant.                                 §
                                           §

**PLAINTIFF'S ORIGINAL COMPLAINT**
**PRELIMINARY STATEMENT and JURY DEMAND**

1.    Plaintiff, Marc Hilinski, hereinafter referred to as "Plaintiff," brings this action against The Lincoln National Life Insurance Company, in its capacity as Administrator of the group Long Term Disability Policy, hereinafter referred to as "Defendant."

2.    Plaintiff brings this action to secure all disability benefits, whether they be described as Short-Term Disability Benefits, Long-Term Disability benefits and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of his employment with Fairfield Town and Public Schools.

**PARTIES**

3.    Plaintiff Marc Hilinski is a resident of Trumbull, Connecticut.

4.    Defendant is a properly organized business entity doing business in the State of Connecticut.  Defendant may be served with process by serving its registered agent, Corporation Service Company, Goodwin Square, 225 Asylum Street, 20th Floor, Hartford, CT  06103.

## II. JURISDICTION AND VENUE

5      This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this court has jurisdiction. Specifically, Plaintiff cites diversity jurisdiction as the Plaintiff is a resident and citizen of the State of Connecticut and Defendant, a foreign corporation, is incorporated under the Laws of Indiana with its principal place of business is in Pennsylvania 28 USC §1332. The amount in controversy exceeds $75,000, as the combined past and future benefits with offsets exceeds the threshold.

6.      The disability policy at issue in the case was issued in the State of Connecticut.

## III. CONTRACTUAL AND FIDUCIARY RELATIONSHIP

7.      Plaintiff has been a covered beneficiary under a disability benefits policy issued by Defendant at all times relevant to this action.  Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Fairfield Town and Public Schools, with coverage beginning on July 1, 2018.

8.      Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

9.      Plaintiff is a 54-year-old man previously employed as a "Teacher."

10.      Instructor, Physical Education (D.O.T. 099.224-010) is classified under the Dictionary of Occupational Titles as Light with an SVP of 7 and considered to be skilled work.

11.    Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on June 4, 2018, as on this date Plaintiff suffered from automated encephalitis of the brain, white matter disease, myelitis and encephalomyelitis.

12.    Plaintiff alleges he became disabled on May 5, 2023.

13.    Plaintiff filed for short-term disability benefits with Defendant.

14.    Short-term disability benefits were approved.

15.    Plaintiff filed for long-term disability benefits through the Plan administered by the Defendant.

16.    Defendant initially granted Plaintiff's request for long-term disability benefits under the Plan.

17.    Subsequently, Defendant denied further long-term disability benefits under the Plan pursuant to a letter to Plaintiff dated June 27, 2025.  Said letter allowed Plaintiff 180 days to appeal this decision.

18.    At the time Defendant denied Plaintiff further long-term disability benefits, the disability standard in effect pursuant to the Plan was Plaintiff must be considered unable to perform his "Own Occupation."

19.    If granted the Plan would pay monthly benefits of $6,000.00.

20.    Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative reviews of the denial of benefits.

21.    Plaintiff timely perfected his administrative appeals pursuant to the Plan by sending letters requesting same to the Defendant.

22.     Plaintiff submitted additional information including medical records to show he is totally disabled from the performance of his own and any other occupation as defined by the Plan.

23.     On August 25, 2025, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long-term disability premium benefits.

24.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

25.     Plaintiff has now exhausted his administrative remedies.

## IV. MEDICAL FACTS

26.     Plaintiff suffers from automated encephalitis of the brain, white matter disease, myelitis and encephalomyelitis.

27.     Treating physicians document continued limitations and the continued dysfunction that requires ongoing infusions.

28.     Plaintiff's multiple disorders have resulted in restrictions in activity.

29.     Further, Plaintiff's physical impairments have resulted in persistent dysfunction in executive functioning and short-term memory.

30.     Plaintiff's treating physicians document these symptoms.  Plaintiff does not assert he suffers from said symptoms based solely on his own subjective allegations.

31.     Physicians have prescribed Plaintiff with multiple medications, including infusions, in an effort to address his multiple symptoms.

32.     However, Plaintiff continues to suffer from discomfort, and limitations in functioning, as documented throughout the administrative record.

33.     Plaintiff's documented dysfunction is so severe it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, meaning an 8-hour day, day after day, week after week, month after month.

34.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

35.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

36.     As such, Plaintiff has been and remains disabled per the terms of the Policy and has sought disability benefits pursuant to said Policy.

37.     However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

## V. DEFENDANT'S UNFAIR CLAIMS HANDLING PRACTICES

38.     On or about August 11, 2025, Defendant's paid consultant, Holly Boston, RN, performed a medicinal review of said review of Plaintiff's claim file.

39.     Nurse Boston's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority.  The reports fail to specify the medical standard upon which they rely.  The reports are based on faulty or incorrect information.

40.     Further, Nurse Boston failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination.  The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing

information that supports disability and the reports do not consider the standard of disability specified in the Policy.

41.    On or about August 11, 2024, Defendant's paid employee, Mary Avrett, performed a manager review of said review of Plaintiff's claim file.

42.    Mary Avrett's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority.  The reports fail to specify the medical standard upon which they rely.  The reports are based on faulty or incorrect information.

43.    Further, Mary Avrett failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination.  The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

44.    On or about August 11, 2024, Defendant's paid employee, Nakeshia Killian, performed a CRS decision review of said review of Plaintiff's claim file.

45.    Nakeshia Killian's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority.  The reports fail to specify the medical standard upon which they rely.  The reports are based on faulty or incorrect information.

46.    Further, Nakeshia Killian failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination.  The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information

by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

47.     On or about May 28, 2025, July 30, 2025, June 25, 2025 and June 27, 2025, Defendant's manager, Vincent Castagno, III, performed a Manager review of said review of Plaintiff's claim file.

48.     Vincent Castagno's report was misleading, biased and result-driven because he failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority.  The reports fail to specify the medical standard upon which they rely.  The reports are based on faulty or incorrect information.

49.     Vincent Castango, failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination.  The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

50.     On or about July 30, 2025, Defendant's paid consultant, Latoya Cochrane, performed a paper neurological review of said review of Plaintiff's claim file.

51.     Dr. Latoya Cochrane's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority.  The reports fail to specify the medical standard upon which they rely.  The reports are based on faulty or incorrect information.

52. Further, Dr. Latoya Cochrane failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination. The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

53. On or about June 26, 2025, Defendant's employee, Joanne Lagattolla, performed a paper review of said review of Plaintiff's claim file.

54. Joanne Lagattolla's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are contrary to controlling medical authority. The reports fail to specify the medical standard upon which they rely. The reports are based on faulty or incorrect information.

55. Further, Joanne Lagattolla failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination. The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

56. On or about June 16, 2025, Defendant's paid consultant, Beatrice Engstrand, neurological disorder expert witness, performed a paper neurological review of said review of Plaintiff's claim file.

57. Beatrice Engstrand's report was misleading, biased and result-driven because she failed to review all relevant medical records, the reports ignore or are

contrary to controlling medical authority. The reports fail to specify the medical standard upon which they rely. The reports are based on faulty or incorrect information.

58.     Beatrice Engstrand failed to consider all the Plaintiff's illnesses and failed to consider all the Plaintiff's illnesses in combination. The report was conclusory and results-driven, as demonstrated by the fact the reports cherry-pick the information by overemphasizing information that supports the Defendant's position and de-emphasizing information that supports disability and the reports do not consider the standard of disability specified in the Policy.

59.     Defendant, with a pre-determined agenda to find Plaintiff not disabled, relies on biased reports from expert witnesses and paid employees. Defendant in bad faith relies on a non-treating non-medical physician, who has not conducted a physical examination of Plaintiff, over Plaintiff's treating physician who has examined Plaintiff over a long and frequent period of time, and with more knowledge of Plaintiff's condition.

60.     Defendant has failed to consider Plaintiff's credible complaints of pain and fatigue which limit Plaintiff's ability to function.

61.     Defendant has selectively reviewed Plaintiff's medical records and has cherry-picked only the excerpts from the medical records that support its pre-determined conclusion Plaintiff is not disabled.

62.     Defendant has failed to apply proper definition of disability.

63.     Defendant has failed to consider the side effects of Plaintiff's medications.

64.     Defendant's consultant completed his reports without examining Plaintiff.

65.     Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long-term disability benefits.

66.     Defendant notified Plaintiff on June 27, 2025 and September 22, 2025 that Plaintiff's benefits were denied.

67.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

68.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

69.     Defendant's determination was influenced by its conflict of interest.

70.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

71.     The long-term disability Plan gave Defendant the right to have Plaintiff to submit to a physical examination at the appeal level.

72.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

73.     More information promotes accurate claims assessment.

74.     Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

75.     Defendant's conduct as a whole has failed to furnish a full and fair review of Plaintiff's claim.

## VI. FIRST CAUSE OF ACTION
### Breach of Contract

76.     Plaintiff repeats and re-alleges paragraphs 1 through 75 of this Complaint as if set forth herein.

77.    Plaintiff paid all premiums due and fulfilled all other conditions of the Plan.

78.    Under the terms of the Plan, Defendant is obligated to pay Plaintiff benefits, in full and without reservation of rights, during the period of time Plaintiff is suffering totally disabled, as those words are defined in the Plan.

79.    In breach of its obligations under the aforementioned Plan, Defendant has failed to pay Plaintiff benefits in full and without any reservations of rights during the period of time Plaintiff is suffering "totally disabled," as those words are defined in the Plan.

80.    Defendant stopped paying benefits to Plaintiff under the Plan, despite the fact Plaintiff was totally disabled, because he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow.

81.    Defendant breached the Plan when it stopped paying benefits to Plaintiff, despite the fact Plaintiff was suffering total disability, as that phrase is defined in the Plan.  Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

82.    Plaintiff has complied with all Policy provisions and conditions precedent to qualify for benefits prior to filing suit.

83.    As a result of Defendant's breach, Plaintiff suffered financial hardship.

84.    By reason of the foregoing, Defendant is liable to Plaintiff for damages.

**<u>VII. SECOND CAUSE OF ACTION</u>**
**<u>Breach of Covenant of Good Faith and Fair Dealing</u>**

85.    Plaintiff repeats and realleges paragraphs 1 through 84 of this Complaint as if set forth herein.

86.    By selling the insurance policy to Plaintiff and collecting substantial premiums, Defendant assumed a duty of good faith and fair dealing toward Plaintiff.

87.    The Plan contains an implied promise it would deal fairly and in good faith with Plaintiff and would do nothing to injure, frustrate, or interfere with Plaintiff's rights to receive benefits under the Plan.

88.    Defendant breached its duty of good faith and fair dealing toward Plaintiff in one or more of the following ways:

(a)    By failing to pay benefits to Plaintiff when Defendant knew or reasonably should have known that Plaintiff was entitled to such benefits;

(b)    By interpreting ambiguous Plan provisions against Plaintiff and in favor of its own financial interests;

(c)    By interpreting the factual circumstances of Plaintiff's disability condition against Plaintiff and in favor of its own financial interests;

(d)    By failing to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled, including several determinations by Plaintiff's treating physician, Dr. John Peters, Yale Neurology;

(e)    By misrepresenting Plan coverage, conditions, exclusions, and other provisions;

(f)    By interpreting the definition of disability contained in the Plan contrary to the plain language of the Policy and in an unreasonable, arbitrary, and capricious manner;

(g)    By failing to provide a reasonable explanation of the basis for the denial of disability benefits to Plaintiff; and

(h)    By compelling Plaintiff to initiate this action to obtain the benefits to which Plaintiff was entitled under the Plan.

89.    By reason of Defendant's wrongful acts in breach of the covenant of good faith and fair dealing, Plaintiff suffered financial hardship, substantial emotional distress, mental anguish, and pain and suffering which exacerbated his depression and anxiety.

90.     The actions of Defendant amount to egregious tortuous conduct directed at Plaintiff, a consumer of insurance.

91.     Defendant's actions directed at Plaintiff are part of a similar conduct directed at the public generally.

92.     Defendant's actions were and are materially misleading and have caused injury to Plaintiff.

93.     Defendant carelessly relied on its own flawed review of the records instead of in person medical examinations to decide to discontinue paying benefits.

94.     By reason of Defendant's wrongful acts in breach of the covenant of good faith and fair dealing, Defendant is liable to Plaintiff for compensatory damages and, for its egregious tortuous conduct, punitive damages, and attorneys' fees, costs, and disbursements incurred in connection with this action.

## VIII. THIRD CAUSE OF ACTION
### Prompt Payment of Claim

95.     Plaintiff realleges and incorporates each allegation contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     Defendant failed to timely request from Plaintiff any additional items, statements or forms Defendant reasonably believed to be required from Plaintiff, in violation of Insurance Code, Chapter 704 § 38-816(15)(B).

97.     Defendant failed to notify Plaintiff in writing of the acceptance or rejection of the claim with reasonable promptness after the receipt of all items, statements, and forms required by Defendant in violation of Connecticut Insurance Code, Chapter 704 § 38-816(6).

98.   Defendant delayed payment of Plaintiff's claim in violation of Insurance Code, Chapter 704 § 38-816(6).

## IX. FOURTH CAUSE OF ACTION
### Statutory Interest

99.   Plaintiff realleges and incorporates each allegation contained in paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.   Plaintiff makes a claim for penalties of 10% statutory interest on the amount of the claim along with reasonable attorneys' fees for Defendant's breach of contract pursuant to Interest Code, Chapter 673 § 37-3a.

## X. CAUSATION

101.   The conduct described in this Petition was a producing and proximate cause of damages to Plaintiff.

## XI. DECLARATORY RELIEF

102.   Pleading further, Plaintiff would show he is entitled to declaratory relief pursuant to Civil Actions Code, Chapter 895 § 52-29.  Specifically, Plaintiff would show he is entitled to declaratory relief due to Defendant's breach of its contractual obligation under the terms of The Policy.  Connecticut Civil Actions Code, Chapter 895 § 52-29.

103.   The evidence at trial will show Plaintiff submitted a timely and properly payable claim for long-term disability benefits to Defendant.  The evidence will show Defendant denied Plaintiff benefits which it contractually owes, because it claims Plaintiff's condition does not meet the Policy's definition of "disabled."

104.    The conduct of Defendant as described above creates uncertainty and insecurity with respect to Plaintiff's rights, status, and other legal relations with Defendant.  Therefore, Plaintiff requests the Court exercise its power afforded under Civil Actions Code, Chapter 895 § 52-29 and declare the specific rights and statuses of the parties herein.  Specifically, Plaintiff requests this Court review the facts and attending circumstances and declare he is disabled as that term is both commonly understood and as defined by the insurance contract made the basis of this suit.

## XII. ATTORNEYS FEES

105.    Plaintiff prays the Court award costs and reasonable and necessary attorney's fees as are equitable and just under Chapter 741d § 42-150bb of the Connecticut Business, Selling, Trading and Collections Practices Code.

## XIII. REQUEST FOR DISCLOSURE

106.    Pursuant to the Connecticut Civil Actions Code, Plaintiff requests Defendant disclose, within 50 days of service of this request, the information or material described in Chapter 900 § 52-197.

## XIV. JURY DEMAND

107.    In accordance with Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury of all issues raised in this civil action that are triable by right (or choice) by a jury.

## XV. KNOWLEDGE

108.   Each of the actions described herein were done "knowingly" as that term is used in the Business, Selling, Trading and Collection Practices Code and was a producing cause of Plaintiff's damages.

## XVI. RESULTING LEGAL DAMAGES

109.   Plaintiff is entitled to the actual damages resulting from Defendant's violations of the law.   These damages include the consequential damages to his economic welfare from the wrongful denial and delay of benefits; the mental anguish and physical suffering resulting from this wrongful denial of benefits; and continued impact on Plaintiff; lost credit reputation; and the other actual damages permitted by law.   In addition, Plaintiff is entitled to exemplary damages.

110.   As a result of Defendant's acts and/or omissions, Plaintiff has sustained damages in excess of the minimal jurisdictional limits of this Court.

111.   Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

112.   Defendant's knowing violations of the Insurance Code and Business, Selling, Trading and Collection Practices Code entitle Plaintiff to the attorneys' fees, treble damages, and other penalties provided by law.

113.   Plaintiff is entitled to statutory interest on the amount of his claim at the rate of 10% per year as damages under Interest Code, Chapter 673 § 37-3a.

114.   Plaintiff is also entitled to the recovery of attorneys' fees pursuant to Chapter 741d § 42-150bb of the Connecticut Business, Selling, Trading and Collections Practices Code.

## XVII. PRAYER

115.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays the Court GRANT Plaintiff declaratory and injunctive relief, finding he is entitled to all past due short-term and long-term disability benefits yet unpaid under the terms of the Plan, and Defendant be ordered to pay all future short-term and long-term disability benefits according to the terms of the Plan until such time as Plaintiff is no longer disabled or reaches the benefit termination age of the Plan.

116.    Enter an order awarding Plaintiff all reasonable actual and punitive damages, pre- and post-judgment interest as allowed by law, attorneys' fees, costs of suit and expenses incurred as a result of Defendant's wrongful denial in providing coverage, and:

117.    Enter an award for such other relief as may be just and appropriate.


Dated: April 24, 2026

[signatures on the following page]

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW, L.L.P.

By:    <u>/s/ Selina Valdez</u>

    Selina Valdez
    Tex. Bar No. 24121872
    Fed. I.D. No. 3633062
    selina@marcwhitehead.com
    403 Heights Boulevard
    Houston, Texas 77007
    Telephone: 713-228-8888
    Facsimile: 713-225-0940
    ATTORNEY-IN-CHARGE
    FOR PLAINTIFF,
    MARC HILINSKI.

*Motion for Pro Hac Vice Admission to be filed contemporaneously*

PATHFINDER DISABILITY LAW, PLLC

By:    <u>/s Hudson T. Ellis</u>
    Hudson T. Ellis (No. CT16708)
    hudson@pathfinderdisability.com
    300 Lynncrest Dr.
    Chattanooga, TN 37411
    Telephone: (423) 803-5921
    Facsimile: (828) 445-1581
    LOCAL COUNSEL FOR
    PLAINTIFF